BOONE v. MRS. MAURER'S BAKERY, Inc.

No. 5323.

Court of Appeal of Louisiana. Second Circuit.

Oct. 30, 1936.

Frank J. Looney and Hunter & Hunter, all of Shreveport, for appellant.

L. Percy Garrot, of Shreveport, for appellee.

## TALIAFERRO, Judge.

Plaintiff sues to recover $1479.92, alleged balance due him on salary account as superintendent for defendant from May 1, 1931, to March 18, 1934. After its exceptions of no cause and no right of action were overruled, defendant answered. The answer is a general and specific denial. The exceptions are persisted in here. After an unsuccessful effort to secure new trial or a rehearing, defendant appealed from a judgment against it for $180.90. Appellee prays for an increase in the amount of the award to that sued for. Testifying, plaintiff admits nothing is due him on 1933 and 1934 salary.

This case was here previously on appeal from a judgment sustaining an exception of vagueness. 158 So. 877. The salient allegations of the petition were reproduced in that opinion. The lower court was reversed and the case remanded for further proceedings. The Supreme Court approved our opinion by denying a writ of certiorari. We deem reiteration of said allegations unnecessary. The exceptions are directed against the same deficiencies in the petition as was the exception of vagueness. We shall paraphrase those parts of the petition which appellant argues are vulnerable to the exceptions. He alleges that he performed the duties of superintendent for defendant, who operated a bakery in the city of Shreveport from May 1, 1931, to February 18, 1934, his salary at the beginning being $100 per week, which was subsequently reduced to $60 per week, and then to $50 per week; that the salary was not always paid in full at week-ends, as a result of which there accumulated to his credit the balance sued for; that he kept no books or records of his dealings with defendant and did not definitely know the dates on which his salary was reduced; that he did not know the weeks in which he did not draw his entire salary, nor the balance due him at the ends of these weeks, but that defendant's own books and records contain all this information, and further show him to be due the amount sued for. He stands squarely upon defendant's books and records.

We think these exceptions without merit for the same reasons assigned by us in overruling the exception of vagueness, viz.:

"In the present case, the exact amount claimed to be due, the period of employment and its nature are given. The failure to give further particulars is explained and these particulars are shown to be in the possession of defendant. This being true, defendant is at no disadvantage because of the meager details given. Plaintiff's position is not unreasonable nor beyond belief. It is well known that the employer and not the employee keeps the books."

Absence from the petition of the allegations of fact complained of by defendant certainly placed it at no disadvantage in intelligently preparing defense to the suit. To hold that, unless these facts are specifically set up, plaintiff's suit cannot be maintained, would be equivalent to denying him the opportunity, because of his unfortunate situation, to have his day in court to assert

and enforce his rights. The law warrants no such strained application of the rules of pleading, and certainly the ends of justice would not be subserved by doing so.

In this court appellee filed a plea of prescription of three years in bar of plaintiff's right to recover any amount. Article 3538, Civ.Code.

After a careful study of the record, we are convinced that plaintiff's action in instituting and prosecuting this suit was almost, if not entirely, influenced by patent errors made in entries on the ledger accounts between himself and defendant. It is conceded by those best acquainted with defendant's business affairs that its system of bookkeeping was extremely crude and loosely kept, particularly in view of the very large volume of business transacted by it. We do not dissent from these views.

Plaintiff's salary for 1930 was $400 per month. There is no dispute as to this. The most important issue in the case is whether his salary was reduced for 1931. If so, there is little left to battle over. We are convinced it was reduced to $300 per month for 1931, although the bookkeeper was probably not advised of such fact until the year had expired, and, for this reason, continued to credit him monthly with $400. Plaintiff, as a witness, testified he did not know when his salary was first reduced, and Mr. Lyles, defendant's president at that time, also could not fix the date of the change. The salary of all other officers of the company was drastically cut for 1931, and no good reason appears why plaintiff's should have been excepted. He says that Mr. Lyles told him that all salaries excepting his, would be reduced, but Lyles positively denies making such a statement, and circumstances pertinent to the question do not sustain plaintiff's contention. Defendant's income tax for the year 1931, executed in March, 1932, lists plaintiff's salary at $3,600 for the year. The person who kept the books for 1930 and 1931 made up this return and acted as notary public to its execution by Mr. Lyles. Having been made at an unsuspicious time, this return is entitled to considerable probative effect. If the salary had been more than $3,600 per year, certainly full deduction would have been claimed therefor. It affected the amount of taxes defendant would have to pay. Another circumstance supporting defendant's contention is found in the total of the monthly amounts paid to and received by him during that year. Cash paid to him and goods purchased by him and charged to and paid for by defendant for his account amounted to $3481.04, as against the salary of $3600; whereas, for 1930, debits against him while his salary was $4,800 aggregate $4,737.40. In other words, it was his practice to live close to his income. This is also reflected by the 1932 account. Another circumstance favoring defendant is to be found in the action of the bookkeeper in making up the second ledger sheet for 1931, on which plaintiff was credited each month with $300. The bookkeeper could not definitely explain why two sheets were made up by her, the first showing the salary to be $400 per month, while the second carried salary entries at $300 per month, beyond the statement that either Mr. Lyles or plaintiff, or both, advised her of the change in salary and she rewrote the account to meet the change. This bookkeeper had been out of defendant's employ for two or three years when the case was tried.

At the end of 1930, there was a balance due plaintiff of $121.94. This amount is carried to his credit on both of the sheets covering the 1931 account. At the foot of the ledger sheet showing the 1931 salary to be $300 per month appears the following pencil notation in the bookkeeper's handwriting: "Salary adjustment by Mr. Lyles & J. R. B."; and in the "balance" column opposite this notation appear the figures $1,282.01, indicating a credit for plaintiff to that extent. No witness could give any information as to why or when this notation was made. Both Lyles and plaintiff say there was no salary adjustment whatever. Plaintiff relies upon this entry to a large extent to win his case. We think the bookkeeper made this notation after she learned that plaintiff's salary had been reduced as of January 1, 1931. Crediting plaintiff with the amount was a patent error. $1,200 of the amount covers the difference between the salary of 1930 and that of 1931, and the $82.01 is an erroneous balance in favor of plaintiff as it appears on the ledger sheet wherein the salary is carried at $400 per month. However, there were other errors on this sheet which are rectified on the second 1931 sheet. There is no good reason whatever for carrying the salary at $300 per month and on the same account credit plaintiff with $1,200 on salary account. That in effect would simply amount to a restoration to plaintiff of the loss to him because of the cut in salary. It would be in fact no reduction. The proper credit due him on the corrected 1931 account is $118.96. For

1932, plaintiff's salary was $240 per month. There seems to be no serious dispute about this. He overdrew his account for this year by $132.45; therefore, on salary account for the years 1930, 1931, and 1932, the account is as follows:

| Credits | | |
|---|---|---|
| 1930 | — | $121.94 |
| 1931 | — | 118.96 |
| | | |
| Total | | $240.90 |
| Debits | | |
| 1932 | — | $132.45 |
| | | |
| Balance due plaintiff | | $108.45 |

The auditors who tried to arrive at a true condition of accounts between these litigants discovered that in January, 1932, plaintiff advanced $40 in cash to defendant's business, and that in January, 1931, a check was issued to him by defendant for $100, and they thought that these two items should be credited and charged respectively to him. No light is shown on them beyond their bare existence. It is not shown to our satisfaction that they were not included in the accounts for those years in some form or other, and, since a balance was struck for both years, we do not think they should be considered one way or the other.

The balance due plaintiff, reflected from our calculations, is $108.45. To arrive at this amount, it was necessary to consider the 1930 account which is not included in the petition. However, no objection was made to the introduction of evidence bearing upon this account and it was as freely dealt with and discussed as the others. In view of this, we think it is before us for consideration.

### Plea of Prescription.

It is contended by plaintiff that he was not an overseer within the intendment of article 3538 of the Civil Code, which provides that actions to recover the "salaries of overseers, clerks, secretaries, and of teachers of the sciences" are prescribed in three years, and that as this article does not specifically include a "superintendent," it is not applicable to his case.

There is a paucity of testimony touching plaintiff's duties. Defendant had 42 employees. Plaintiff's duties, in addition to purchasing for the bakery, presumably were to direct and oversee the employees. It is the nature of the duties and not the name applied to a position which determines the applicability of the prescription directed against the right to recover for services rendered thereunder. "Superintendent" is defined by Webster as one who has the oversight and charge of some place, etc., synonymous with inspector, overseer, manager, and supervisor. "Overseer" is defined as one who oversees, superintends; a superintendent; a supervisor, as "an overseer of a mill." Therefore, it seems clear that there is no real difference in meaning between the words "overseer" and "superintendent." They are synonymous. These views are supported by Andrew Nachtrib v. Prague & Sherman, 6 La.Ann. 759; Tobert Keaghey v. William Barnes, 11 Rob. 139.

We are of the opinion, as this suit was only filed June 20, 1934, that the plea of prescription is good against the balance of salary due plaintiff for 1930, and, this being true, he is not entitled to judgment for any amount, as his 1932 overdraft more than absorbed the balance in his favor on the 1931 account. The fact that services were continuously rendered to a date within three years of the filing of suit does not affect the current of prescription against the balance due on the 1930 salary. Cresap v. Winter, 14 La. 553; Colley v. Succession of Latourette, 7 La.Ann. 222.

For the reasons herein assigned, the judgment appealed from is annulled, avoided, and reversed; and there is now judgment for defendant rejecting plaintiff's demands and dismissing his suit, with costs.