OVERTON, J.
 

 Julius 0. Wolff, the plaintiff herein, addressed a petition to the civil district court for the parish of Orleans, in which he alleges that the Hibernia Bank & Trust Company, the defendant herein, is indebted to him in the sum of $2,420.S6, for this, to wit: That he was a stockholder in the Julius C. Wolff Company (hereinafter referred to as the Wolff Company), a corporation created under the laws of this state; that said corporation transferred all of its assets to defendant for the purpose of- enabling defendant to pay itself, out of the assets transferred, an indebtedness due it by the Wolff Company; that at the time the transfer became effective it was understood, between the Wolff Company and defendant that defendant would satisfy the creditors of-the Wolff Company; that the Wolff Company was, by said transfer, absorbed by defendant, the Wolff Company thereafter merely retaining its nominal corporate existence; that, after the transfer of said assets, he entered into a contract with the Wolff Company and defendant, under the terms of which he was to sell certain of the merchandise that had been so transferred or pledged; that, under said contract, he was to receive as his compensation for the sale of said merchandise all amounts in excess of the price stated in the list attached to the contract; that before the orders which he obtained were finally accepted they were submitted to defendant, and, upon being finally accepted, his duties, under the terms of the contract, ceased, and he was then entitled to receive 50 per cent of the excess over the list price, within 15 days after the acceptance of the order, and the balance thereof when collect-
 
 *351
 
 «d; that, under the terms of said contract, upon the acceptance of the orders by the Wolff Company and defendant, they were obligated to ship the goods out, at their own expense and risk; that the only expenses that he' (plaintiff) was to bear were his personal expenses incurred in connection with the selling of said merchandise; that he (plaintiff), acting under said contract, secured numerous orders for said merchandise, and transmitted the same to the Wolff Company and defendant; that these orders were accepted, and in accordance therewith the merchandise for which the orders were obtained was shipped to the customers, giving them; that the cost price on the orders, obtained by him and accepted by defendant, according to the list attached to said contract, amounted to the sum of $91,529.41; that the total price for which he (plaintiff) sold the merchandise, the orders for which were accepted by defendant, amouxxted to $104,352.65 ; that he has received on account $10,392.81, to which must be added another credit of $9.57; that he has repeatedly called upon defendant for an accounting, and for an adjustment of the balance due him, but that defendant has refused to grant him an accounting or to pay him the balance to which he is entitled; and that he is informed and believes, and alleges this information and belief as a fact, that defendant has collected all amounts due on the orders taken by him for said merchandise, and, therefore, that he is entitled to recover from it the profits earned by him.
 

 Then, after alleging that defendant is indebted to him for interest at the rate of 5 per cent, per annum on the balance due him, and after alleging his right to an accounting, and, after attaching to his petition, and making part thereof, the contract sued on, plaintiff prays for judgment against defendant for said sum of $2,426.86, or so much thereof as may be found due, with interest thereon from the respective dates said moneys came into the possession of defendant, and for judgment reserving to him the right to a further accounting, should the same become necessary.
 

 The contract, attached to and made part of plaintiff’s petition, reads as follows:
 

 “This agreement entered into between Julius C. Wolff and Julius O. Wolff & Co., herein represented by its vice president, J. L. Morrison, and its secretary treasurer, Otto L. Neugass, witnesseth;
 

 “Eor mutual consideration the said Julius 0. Wolff Company does hereby employ and authorize the said Julius C. Wolff to sell any or all of its merchandise whether in possession of said Julius O.’ Wolff Company or in the possession of the Hibernia Bank and Trust Company or of others whatsoever, for a price not less than set out in the schedule hereto annexed and signed by both parties hereto.
 

 “All order’s taken by said Julius C. Wolff are to be promptly turned in to Julius C. _ Wolff Company, and must be approved by said Julius C. Wolff Company and Hibernia Bank & Trust Company, who shall alone be entitled to pass upon the credit of the purchasers.
 

 “That said Julius C. Wolff Company shall if the order be accepted promptly ship out the said goods at its own expense, and risk and all further responsibility of said Julius C. Wolff in connection therewith shall cease, except that said Julius C. Wolff shall bear all his own personal expenses connected with the selling of said property, and he shall be entitled to any excess that may be obtained from the sale of said goods over and above the said list prices which shall be paid over to the said Julius C. Wolff as soon as collected.
 

 “Fifty per cent, of such excess shall be paid to said Julius C. Wolff within 15 days after the acceptance of the order*, the balance to be paid when purchase pi'ice is collected; and until said purchase price be paid said Julius C. Wolff shall have no claim for the payment of said balance; and if the purchase price is not paid, or if the account is lost said Julius' O. Wolff shall be entitled to retain the 50 per cent, paid him; the term of sale in all cases to be subject to the approval of said Julius 0. Wolff Co., and Hibernia Bank and Trust Company.
 

 “This agreement to last for thirty days from the date hereof, but shall continue thereafter subject to termination by either party upon three days’ notice.
 

 “The said Wolff shall be entitled to his said profits upon all sales made by him or received through his efforts directly or iixdirectly, but same shall not apply to any sales made by S.
 
 *353
 
 J. Loeb, nor to any local sales made by Otto L. Neugass, nor to any mail orders received for less than 100 rolls.
 

 “This agreement to be in force only so long as the said Julius 0. Wolff Company, and the Hibernia Bank and Trust Company or either of them have control of the said merchandise; and, in the event they no longer have such control, the said Julius C. Wolff to have no further claim upon the said Julius C. Wolff Company, and the Hibernia Bank & Trust Company, or either of them, except for profits already earned.
 

 “This agreement is a separate, distinct agreement between the parties, and the validity of any other agreement whatsoever between the parties is not to be affected thereby.
 

 “Witness our signature at New Orleans, La., this 9th day of April, 1912.
 

 “[Signed] Julius C. Wolff Co.,
 

 “Otto L. Neugass, See.-Treas.
 

 “J. S. Morrison. V. P.
 

 “Approved:
 

 “[Signed] B. McCloskey, Atty.”
 

 Against this demand defendant filed two exceptions. One of these is an exception of vagueness, based on the ground that neither of the documents attached to the petition nor the allegations of the petition show how plaintiff arrived at the figures on which he bases his suit, and, moreover, that the allegations of the petition are vague and general. The second exception is that plaintiff’s petition does not disclose a cause or right of action.
 

 Due to one cause or another, these exceptions remained undisposed of for a number of years. Some seven years after they were filed, plaintiff, with the leave of the court, filed an amended petition. To this petition he attached an itemized statement of profits on all sales made by him under the contract, and alleges that there is due him by defendant $2,556.23, instead of $2,420.86, as alleged in the original petition. He avers that the error in the amount originally sued for was due to an error in calculation. He also alleges that the contract, under which he made the sales, was entered into by him, the Wolff Company, and defendant, and that the words “Approved, B. McCloskey, Atty.,” appended to the same, were intended to show the assent of défendant to said contract, so as to bind it( as a party thereto. The remaining allegations of the amended petition may be said to be a reiteration, in a different form, of some of the allegations of the original petition.
 

 Defendant promptly excepted to this amended petition on the ground that, at the time it was filed, there was pending and undetermined the exception of no cause of action, mentioned above and, until that exception should be disposed of, no amended petition could be filed or heard to its prejudice.
 

 The lower court does not seem to have passed directly upon the exception to the amended petition, nor upon the exception of vagueness, but sustained the exception of no cause of action, and dismissed plaintiff’s suit. From this judgment plaintiff has appealed.
 

 We.see no reason why plaintiff should not have been permitted to file, as he did, the amended petition with the leave of the court. The amendment introduced no new issue in the case, nor did it alter the substance of plaintiff’s demand. One of its purposes is to make more specific the allegations of the original petition, showing how the amount sued for was arrived at, by attaching an itemized statement of the profits or commissions on the sales made, and thereby correcting any defect of vagueness there might be, in that respect, in the original petition. The amendment, having such object in view, and its effect being no greater than the object it had in view, certainly cannot be said to introduce a new issue into the case nor to alter the substance of the demand against defendant. Another purpose of the amended petition is to correct an error as to the amount sued for; the effect of the correction being to increase the amount something over $100. The correction of this error introduced no new issue and we are not of the opinion that it can be regarded, in any legal sense, as changing the substance of plaintiff’s demand.
 
 *355
 
 ■ The third purpose of the amendment is to allege specifically that the words “Approved, B. MeCloskey, Atty.,” showed the assent of defendant to the contract, and that Mr. Mc-Closkey’s signature to the approval was, in effect, the signature of defendant to the contract. As appears from the original petition, plaintiff’s position was then, as it now is, that defendant was bound by the contract, and it was for that reason that plaintiff sued defendant. We are not of the opinion, therefore, that the amendment, in this respect, introduced a new issue into the case, or changed the substance of the demand against defendant. It relates only to the manner, ozone of the ways, in which it is said defendant became boizizd.
 

 As relates to the remaining allegations of the amended petition, as we have said, they are mere reiterations, in a different form, of some of the allegations of the original petition.
 

 The rule is that an amendznezzt is always allowed, if offered at a time when it will not operate to give the pleader an unfair advantage, or introduce a new issue into the case, or change the substance of the demand. James v. City of New Orleans, 151 La. 480, 91 So. 846.
 

 We are not of the opinion that the fact that ■ an exception was pending at the time the amendment was filed, the purpose of which .'was largely to meet the exception, affects the question. In the Jaznes Case, cited supra, there was not only an exception pending, but it had been argued and submitted, and was under advisement, when the arnendznent was filed, yet the amendnzent was permitted. Nor are we of the opinion that, in this instance, the mere fact that some seven years intervened between the filing of the original petition and the amendment, or between the filing of the exception and the amendment, affects the question. The suit was not even at issue, when the amendment was filed, and it does not appear that the filing of it will give to plaintiff- an unfair advantage.
 

 ■ However, aside from the amendment, that is, without it, we think that the petition discloses a cause of action.
 

 The position of defendant is that the petition discloses no cause of action, because the contract, attacízed to and made part of it, shows upon its face that it is a contract entered iizto only betweezz plaintiff aizd the Wolff Company, and that the signature of Mr. MeCloskey was appended only for the purpose of approving the contract, as defezzdant’s attorney, for its guidance, and not for the purpose of binding defendant; there being nothing to the approval of Mr. MeCloskey indicating an intention, .even if he had the power, to bind his client.
 

 However, disregarding altogether the signature of Mr. MeCloskey, or, in other-words, giving it no effect whatever, as showing the assent of defendant to the contract, we nevertheless think that the original petition discloses a cause of action. The allegations of that petition, as must those of any other petition, be accepted as true for the purposes of the exception of no cause of action. Those allegations show that defendant had knowledge of the contract; that it had an interest as pledgee in the disposal of the goods; that it approved, under the contract, the orders obtaiized by plaintiff for them; that, by the terms of the contract, under which defendant acted, plaintiff was to receive a certain part of the purchase price as his; and that defeizdant collected the bills due for that price, which, we may add, necessarily includes that portion of it due, or belonging to, plaintiff, by the terms of the contract, for selling the goods. .By acting under the contract, defendant consented, even without signiizg it, that plaintiff might have that part of the pur-chase price obtained by him for effecting the sales. Defendant, having so consented, has no right to retain in its possession to apply on the iizdeljtedness that may
 
 *357
 
 be due it by Wolff & Co., or for any other purpose, that part of the purchase price due or belonging to plaintiff. Hence our conclusion is that even plaintiff’s original petition discloses a cause of action. As there is nothing in the petition, as amended, to detract from the cause of action shown in the original petition, it follows that the original petition, with the amendment, discloses a cause of action.
 

 For the reasons assigned, the judgment appealed from is avoided and set aside, and it is now ordered that said exception of no cause of action be overruled, and that this case be remanded to the lower court to be proceeded with according to law, appellee to pay the costs of this appeal, the costs of the lower court to abide the final .determination of this case.